STUART, Justice
(concurring specially).
I concur with the majority opinion completely. I also concur with Justice Smith’s special concurrence. I write to reemphasize the problem with the court-created “no viable alternative” second prong of the termination-of-parental-rights test adopted by this Court in Ex parte Beasley, 564 So.2d 950 (Ala.1990). I have written at length concerning the origin of this judicial engraftment of a requirement outside the statutes and its subsequent modification, which made bad caselaw worse. See Ex parte F.P., 857 So.2d 125 (Ala.2003) (Stuart, J., dissenting). Although this judicially created test has become entrenched in our caselaw, it is nevertheless erroneous and perhaps will one day be overruled.
The subsequent interpretation of “no viable alternative” by this Court and the Alabama Court of Civil Appeals has exacerbated the problem the test creates in child-welfare practice. For example, as Justice Smith notes in her special writing, the rationale relied on by the majority in our recent decision in Ex parte T.V., 971 So.2d 1 (Ala.2007), suggests that the Department of Human Resources, before filing a termination-of-parental-rights petition, must pursue any viable relative resource, no matter how long a child has been in foster care and, in my opinion, no matter how beneficial a child’s proposed permanent placement. With such an interpretation of the “no viable alternative” prong of the test, the Court seems to have overlooked the “best interest of the child” and mistakenly placed “family reunification” in a position superior to “permanency for the child” as a consideration in child-welfare cases. I assert that “family reunification” and “permanency for the child” stand on equal footing as considerations in child-welfare eases and that “the best interest of the child” must always be paramount in cases involving child custody.
Furthermore, even under existing law, relatives of the child who do not come forward and seek custody of the child in a timely fashion after a child’s removal from his or her home but who rather belatedly come forward seeking custody only when the termination of parental rights is imminent are in almost all cases not a viable alternative to the termination of parental rights and the placement of the child for adoption. This fact is especially true in a case such as this one, where the result of the effective termination of the mother’s rights and adoption is a continuation in the custody of the only people the child has known as parents. In most such situations, only the termination of parental rights and adoption promotes the best interest of the child and provides the permanence desperately needed by a child who, through no fault of his or her own, is placed into our foster-care system.
*1025 So long as our child-protection system does not promote the best interest of our children, concerned parties with the best interest of the children at heart -will continue to turn to the probate courts of our State in appropriate cases.
SMITH, J., concurs.